IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PHILIP C.[1], | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 7:20-CV-422 |
| | ) |
| KILOLO KIJAKAZI[2], Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Philip C. ("Philip") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f.  Philip alleges that the Administrative Law Judge ("ALJ") erred by failing to provide accommodations for his left eye vision impairment in the residual functional capacity ("RFC"). I conclude that substantial evidence supports the Commissioner's decision in all respects.  Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19) and **DENYING** Philip's Motion for Summary Judgment (Dkt. 15).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Philip failed to demonstrate that he was disabled under the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Philip filed for SSI and DIB in December 2015[4], alleging disability beginning that same date. R. 10.[5] The state agency denied Philip's claims at the initial and reconsideration levels of

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Philip filed previous applications for benefits in which he alleged disability beginning in April 2010. R. 93–105. Philip's applications were denied by the Commissioner on December 10, 2015. Id.

[5] Philip's date last insured was March 31, 2018; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 13; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

administrative review. R. 111–72. ALJ Jeffrey Schueler held a hearing on July 23, 2019 to consider Philip's claims for DIB and SSI, which included testimony from vocational expert Asheley Wells. R. 34–59. Philip was represented by counsel at the hearing. On August 7, 2019, the ALJ entered his decision considering Philip's claims under the familiar five-step process[6] and denying his claim for benefits. R. 10–21.

The ALJ found that Philip suffered from the severe impairments of mild lumbar spine degenerative disc disease, osteoporosis, knee osteoarthritis, and strabismic exotropia of the right eye. R. 13. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 13–14. The ALJ concluded that Philip retained the residual functional capacity ("RFC") to perform light work, with occasional climbing, stooping, kneeling, crouching, crawling, or overhead reaching. R. 14. The ALJ also determined that Philip should avoid concentrated exposure to hazards, such as moving machinery or heights; needs work involving no peripheral activity to the right; and needs work that does not involve reading or fine print. Id. The ALJ determined that Philip is unable to perform his past relevant work as a long-haul truck driver, but that he could perform other work in the national economy such as laundry worker or housekeeper. R. 19–20. Thus, the ALJ

---

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

concluded that Philip was not disabled. Id. Philip appealed and the Appeals Council denied his request for review on May 27, 2020. R. 1–6.

## ANALYSIS

Philip alleges that the record supports additional RFC limitations due to vision impairments in his left eye.[7] The ALJ determined that Philip's exotropia of the right eye was a severe impairment and included restrictions in the RFC to avoid concentrated exposure to hazards, no peripheral activity to the right and no reading or fine print. Philip alleges that his left eye vision impairment is a severe impairment that requires additional accommodations in the RFC.

Philip has congenital vision loss in his right eye. At the administrative hearing, Philip testified that he can see light with his right eye, but not make out shapes. R. 47–49, 51–52. Philip testified that with his left eye and corrective lenses he can read larger print. R. 52. Philip did not testify to any difficulty with the vision in his left eye. R. 36–59.

Philip underwent a consultative examination with William Humphries, M.D., on September 7, 2017. Philip reported "essentially no vision in his right eye since birth," he has light perception only with some occasional blurred images. R. 511. Upon examination, his visual acuity was 20/25 corrected, and his visual fields were intact on the left. R. 512. Regarding Philip's vision, Dr. Humphries noted:

> Vision/hearing appearing grossly normal. He wears corrective lenses. There is a marked exotropia of the right eye. The right pupil is nonreactive to light with light perception only; cannot count fingers at 14 inches corrected. On the left, the pupil is 4mm and round and reactive to light. He counts fingers correctly, corrected, at 14 inches. Sclerae are anicteric. The extraocular muscles are intact on the left.

---

[7] Philip's appeal focuses solely on his visual impairments; thus, I will not address his other medical records and impairments in this opinion.

R. 512. Dr. Humphries diagnosed congenital blindness in the right eye, but recommended no job restriction regarding heights, hazards or fumes. R. 513–14.

On September 13, 2017, state agency physician Brian Strain, M.D., reviewed Philip's records and determined that his loss of central visual acuity was a severe impairment. R. 119. Dr. Strain found that Philip had limited near and far acuity, accommodation, color vision and field of vision in his right eye. R. 122. Dr. Strain noted this was due to Philip's right eye blindness and that his left eye had 20/25 correct visual acuity and full fields. Thus, Dr. Strain determined that Philip should avoid concentrated exposure to hazards. Id. On January 9, 2018, state agency physician Bert Spetzler, M.D., reviewed Philip's records and agreed with Dr. Strain that Philip has visual limitations in his right eye and should avoid concentrated exposure to hazards. R. 151–53.

On January 30, 2018, state agency reviewing physician John Humphreys, M.D., completed a medical consultant's review and determined that there should be no RFC limitations based on Philip's vision, stating, "history of strabismus and amblyopia…record good acuities and no support for RFC limitations." R. 515. The same day, state agency consultant Louis Chelton, M.D., reviewed Philip's records and determined that due to his right eye vision impairment, Philip should avoid hazards such as heavy or dangerous machinery, unprotected heights, and environments which may require rapid and effective response to hazardous events. R. 517.

The ALJ reviewed Philip's medical records, his testimony during the administrative hearing, and the physician opinions. R. 14–19. The ALJ noted that the record "contains virtually no findings as to the claimant's visual impairment, absent a note during consultative examination that it was non-reactive to light, which has been accounted for in the above residual functional

5

capacity." R. 17.   The ALJ gave Drs. Strain and Spetzler's opinions great weight, finding them consistent with the record. R. 18.  The ALJ gave reviewing physician Dr. Humphreys' opinion that Philip should have no visual or environmental limitations little weight, finding it inconsistent with the record. R. 18.  The ALJ noted, "the claimant underwent a consultative examination and exhibited numerous abnormalities of the right eye, resulting in a diagnosis of congenital blindness, which supports the additional limitations shown above, and is consistent with the opinions of both Drs. Spetzler and Strain." Id.  The ALJ gave Dr. Chelton's opinion great weight, finding that the record supports his suggested environmental limitations such as avoiding concentrated exposure to heavy or dangerous machinery, unprotected heights  and hazardous events. Id.

The ALJ reviewed Dr. Humphries' consultative opinion and gave it some weight, finding it overall consistent with the record. The ALJ specifically noted that Philip's right eye blindness warrants additional environmental and postural limitations. Id. Thus, the ALJ determined that Philip could perform light work but should avoid concentrated exposure to hazards, needs work involving no peripheral activity to the right, and no reading of fine print. R. 14.

Philip asserts that "[a]lthough the visual deficits are greater in the right eye, the allegations and records support additional limitations due to the left eye." Pl. Br. Summ. J. p. 8. In support, Philip points to his allegation of "poor vision in left eye," in his disability report (R. 352); treatment records from his eye doctor Scott Campbell, O.D., that "appears to note blurred vision in the left eye" (R. 532)[8]; multiple physical examinations that found Philip to have disconjugate gaze; and testing prior to the current alleged disability period that reflected "right eye absolute scotomy, left eye peripheral scotoma" (R. 423). Id.

---

[8] Dr. Campbell's notes are difficult to interpret; thus, I will rely upon Plaintiff counsel's representation of those treatment records for purposes of this opinion.

Philip's argument does not undermine the substantial evidence supporting the ALJ's decision, but rather, points to a few treatment notes or records referencing his left eye and asserts that they warrant additional accommodations in the ALJ's decision. I find that the ALJ's decision is supported by substantial evidence and should not be disturbed.

The ALJ reviewed Philip's treatment records, his testimony and the physician opinions in the record in detail. Notably, Philip did not testify to any difficulty with his left eye vision at the administrative hearing. R. 36–59. Philip's treatment records include few references to his left eye. Dr. Humphries' examination reflected a round and reactive left pupil, the ability to count fingers correctly at 14 inches on the left with corrective lenses, 20/25 visual acuity on the left with intact visual fields, and 20/25 visual acuity with both eyes together. R. 512. Dr. Humphries did not diagnose any impairment with Philip's left eye. Philip points to a treatment note from Justin Rowe, O.D. on August 23, 2013, where Dr. Rowe noted a peripheral scotoma in his left eye. R. 423. However, Dr. Rowe did not identify any left eye limitations at that visit, and Philip did not complain of any concerns with his left eye. R. 421–23.

The ALJ accommodated Philip's vision impairment by limiting his exposure to hazards and requiring work that did not involve peripheral activity to the right or reading fine print. The ALJ adopted all the vision accommodations identified by the state agency physicians in the record, and no physician recommended more restrictive accommodations than those set forth in the RFC. Philip does not identify what additional limitations he believes are necessary to accommodate his alleged vision impairment in the left eye.

The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d

337, 340 (4th Cir. 2012). Having reviewed the record, I find that the ALJ's decision is supported by substantial evidence.

### **CONCLUSION**

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 3, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge